# THEODORE H. EATON

*v.*

# WESLEY TRUESDAIL *et al.*

1. LIEN—*as between an attaching creditor and a factor of the debtor.* A person having property of another in his possession as a factor, accepted a draft drawn by the owner of the property in favor of one of his creditors; the draft was made specifically payable out of the property, and it was agreed between the debtor and his creditor that the factor should retain the custody and control of the property, as their mutual agent, for the specific purpose of paying the draft: *Held,* that the effect of the transaction was to give to the factor a lien on the property to secure him against his liability as acceptor of the draft, and while the property thus remained in his possession, no purchaser from the owner, or creditor, could acquire an interest in it paramount to such lien.

2. The debtor, at the same time he made the draft, also gave to the creditor, in whose favor the draft was drawn, a chattel mortgage upon the property, in which it was stipulated that the property should remain in the custody of the factor, as their mutual agent, and that he should sell the same, and after discharging certain other acceptances of his for the debtor, should pay the balance to the mortgagee, to be applied on the draft. Power was given the mortgagee to take possession of and sell the property, in case of default. The mortgage was not recorded. The mortgagee, however, advertised and sold the property, buying it in himself, and afterwards sold it to the factor for the amount of his acceptance, which he paid. It was *held,* although the mortgage might be inoperative as such as against third persons, by reason of not being recorded, yet it was an agreement valid between the parties, and the transaction might be regarded as a voluntary payment of the draft by the acceptor, for which he was liable, and which he was authorized to do out of the property, by virtue of his lien, and there could be no liability in respect thereto on the part of the creditor who thus

obtained payment of his draft, to another creditor of the same debtor, who had levied an attachment upon the property after the mortgage and draft were made, but before the sale.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion of the court contains a sufficient statement of the case.

Mr. E. S. SMITH, for the plaintiff in error.

Messrs. BECKWITH, AYER & KALES, for the defendants in error, George Smith & Co.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

On the 21st of March, 1856, Wesley Truesdail, of Detroit, and Isaac L. Lyon, of Chicago, entered into a written agreement, by which Lyon was to receive and sell at his lumber yard in Chicago, all lumber shipped to him by Truesdail.

The agreement specified that Lyon was to advance the freights, established the rate of his commissions, and provided for rendering an account of sales at the beginning of every month. On the 21st of February, 1857, Truesdail, being then indebted to George Smith & Co. bankers in Chicago, in the sum of $21.794.24, drew a draft for that amount on Lyon in their favor, payable out of the proceeds of lumber belonging to Truesdail in the hands of Lyon. This draft was to fall due on the 1st of September, 1857, with interest at ten per cent, and was accepted by Lyon on the day it was drawn.

At the same time Truesdail executed and delivered to Smith & Co. a chattel mortgage upon the lumber, to secure the payment of said draft. It was stipulated in the mortgage that the lumber should remain in the custody and control of said Lyon as the mutual agent of the parties; that he should sell the same, and after discharging certain other acceptances of his for said

Truesdail, estimated at $15,000, should pay the balance to said Smith & Co. to be applied upon said draft. Power was given to Smith & Co. by the mortgage to take possession of and sell said property in case of default in payment. The mortgage was not recorded. Lyon agreed to hold the property subject to the trusts specified in this instrument.

Truesdail continued to ship lumber to Lyon through the summer of 1857, and until the 1st of October, when Eaton, the appellant herein, a resident of Detroit, commenced suit by attachment against Truesdail, and levied the writ upon his interest in the lumber in Lyon's yard, and summoned Lyon as a garnishee. On the 13th of October Truesdail caused his appearance to be entered in the suit, and judgment was rendered by agreement against him for $9807.54, on which a special writ of *fi. fa.* was issued. Interrogatories were filed against Lyon, as garnishee, who answered that he had in his possession about $30,000 worth of lumber, consigned to him by Truesdail, on which he had a lien for acceptances and advances amounting to about $40,000.

On the 7th of October, 1857, Smith & Co. advertised the lumber for sale under their mortgage, and on the 17th it was offered for sale at public auction and struck off to Smith & Co. for $9807.54, who, the next day, sold it to Lyon for the amount due on the acceptance. Lyon gave them his note for the money, which he swears was afterwards paid.

On the 9th of January, 1858, Eaton filed this bill in chancery, setting up the attachment proceedings, the issuing of the special writ of *fieri facias* against the property attached, which writ was then in the hands of the sheriff, and claiming that he had thereby acquired a lien upon all the lumber in Lyon's yard, which had been consigned to him by Truesdail. The bill alleges that Lyon pretended to have a lien on the lumber for commissions and advances, on account of which he insisted upon holding the property, but that he had, in fact, no just claim against Truesdail, or one only for an inconsiderable amount; that the defendants, Smith and Willard, who

310          Eaton *v.* Truesdail *et al.*          [Sept. T.,

Opinion of the Court.

were copartners, doing business as bankers, under the name of Geo. Smith & Co. also pretended to have a lien on said lumber, or a portion of it, by virtue of a pretended chattel mortgage from Truesdail to them, and that after the levy of the attachment they took possession of and sold two millions feet of lumber and 1,500,000 pieces of lath, of which they became the purchasers; that they claimed to have thus become absolute owners of so much of the said lumber and lath, but that in fact no valid mortgage existed at the time of the attachment; that the same was fraudulent and void as against the complainant, and that said Smith & Co. had no legal or equitable right or title to any part of the property; that the pretended sale under the mortgage was merely colorable, and the pretense of ownership derived therefrom was calculated and designed to hinder the complainant in the collection of his debt.

The bill prays for an account from Lyon touching his alleged claims on the lumber and lath, and that on payment of what shall be found due, the said claims may be discharged; that the chattel mortgage set up by George Smith & Co. and the sale thereunder, may be declared fraudulent and void; and that all the lumber in Lyon's yard at the time of the attachment may be subjected to sale upon the special execution issued on the complainant's said judgment.

Separate answers were filed by Lyon and George Smith & Co. denying that any lien on the lumber was acquired by the complainant's attachment; alleging that the lumber had been consigned to Lyon for sale on commission, and that he had a lien upon it for more than its value; and insisting upon the validity of the chattel mortgage and of Smith & Co.'s title to the property covered by it.

Proofs were taken, and on a final hearing the bill was dismissed.

It is insisted by counsel for plaintiff in error that the mortgage was void, as to creditors, for want of compliance with the

statutory requirements; that all the proceedings under it were of no avail as against complainant, and that Smith & Co. wrongfully interfered with the lumber, and must be held liable to complainant, as an attaching creditor, for its value. The bill, as originally filed, sought also an account and decree against Lyon, but he became insolvent, and it seems to have been finally prosecuted and brought to this court for the purpose of establishing a liability against Smith & Co. The argument by counsel for plaintiff in error has been directed to this end, and Lyon does not appear by counsel in this court.

Notwithstanding the elaborate argument of counsel for plaintiff in error, we are wholly unable to perceive any ground upon which a decree against Smith & Co. can be rendered. Admit the mortgage and all proceedings under it to have been invalid, so far as depended upon its claim to be regarded as a statutory chattel mortgage; it was, nevertheless, an agreement perfectly valid as between the parties, and when taken in connection with the terms of Truesdail's draft, which was made specifically payable out of the proceeds of the lumber, and with Lyon's acceptance, by which he made himself personally and primarily liable for the payment of the draft, and with the specific agreement that Lyon should have the custody and control of the lumber for that purpose, the unquestionable effect of the transaction was to give to Lyon a lien upon the lumber in his possession to secure himself against all liability; and while the property thus remained in his possession, no purchaser from Truesdail, nor creditor, could acquire an interest in it paramount to such lien. He could be required to give up the possession, only by relieving him of his liabilities.

It is, then, wholly unnecessary to consider whether Smith & Co. had a lien which they could enforce for their own protection as against an attaching creditor. Admit they had none, and that their purchase under the mortgage upon one day, and their sale to Lyon upon the next, were void; it amounted then, simply to a voluntary payment by Lyon of his accept-

ance. The draft was overdue—he was liable as acceptor—and he took it up with his own note, Smith & Co. relinquishing to him whatever interest they had in the lumber, and he holding it, with a power of sale, as Truesdail's factor, and subject to the right of Truesdail to call upon him for an account. In all this Smith & Co. were surely guilty of no wrong to any one. They simply received payment of their debt from Lyon, who had undertaken to pay it out of the proceeds of certain property placed in his hands by Truesdail for that purpose, and upon its payment they relinquished to Lyon their interest in the property, whatever it may have been. It is not pretended the debt was not honestly due, and how the acceptance of its payment from Lyon, who had agreed to pay it, can be construed into a wrong to plaintiff in error, which entitles him to a decree against Smith & Co. for the money thus paid, we are not able to understand. Their interference with the property by selling it to Lyon, placed the plaintiff in error in no worse position. If they had remained quiescent, the attachment of the plaintiff in error would still have been subject to Lyon's right, as acceptor of Truesdail's draft, to have the property applied to its payment, and to retain and sell it for that purpose.

As we have already remarked, Lyon seems to have become insolvent, and does not appear in this court by counsel. We see no reason why, after dismissing the bill as against Smith & Co. the court might not have retained it as against Lyon, and referred the case to a master for the purpose of stating an account between Truesdail and him for the benefit of complainant. But this was not asked; and as Truesdail, who is evidently acting in accord with complainant, states the amount of lumber in the yard at the time of serving the attachment at about $20,000, and as the debt paid by Lyon to Smith & Co. was more than that sum, it is probable nothing would be due Truesdail on a statement of the account, giving Lyon credit for the amount paid by him. The garnishee process

against Lyon was dismissed after the commencement of this suit.

The decree of the circuit court is affirmed, without prejudice, however, to future proceedings against Lyon.

*Decree affirmed.*